**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CANAN AYDIN**, <br><br> Plaintiff, <br><br> *v.* <br><br> **DEPUTY DIRECTOR ASTER ZELEKE**, <br> *Deputy Director of the Newark Asylum Office of the USCIS*, et al., <br><br> Defendants. | **CIVIL ACTION** <br><br><br> **NO. 24-6253-KSM** |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                    **December 5, 2025**

Plaintiff Canan Aydin, a citizen of Turkey and current resident of Morrisville, Pennsylvania, entered the United States on a B-2 Visitor Visa on August 5, 2020. Around five months later, on December 28, 2020, Aydin applied for asylum by filing a Form I-589 application with the United States Citizenship & Immigration Services ("USCIS"). Despite filing her Form I-589 application nearly five years ago, Aydin has yet to receive a decision from USCIS. Accordingly, she filed this action to compel the relevant government officials (referred to collectively as "USCIS") to adjudicate her application for asylum. (Doc. No. 1.) USCIS now moves to dismiss her Complaint. (Doc. No. 7.) For the following reasons, the motion is granted.

## I.    BACKGROUND

The Immigration and Nationality Act ("INA") permits noncitizens present in the United States to apply for asylum, either affirmatively or defensively. 8 U.S.C. § 1158(a)(1); 8 C.F.R. §§ 208.2, 208.3(a), 1208.2. Affirmative asylum applications are submitted using a Form I-589 Application for Asylum and for Withholding of Removal and are adjudicated by the Asylum

Division of USCIS.[1]  Individuals seeking asylum must demonstrate that they are unwilling or unable to return to their nation of origin because of past persecution, or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B).

The INA sets standards that govern the consideration of asylum applications:

> **(A) Procedures:** The procedure established under paragraph (1) shall provide that—
>
> **(i)** asylum cannot be granted until the identity of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State, including the Automated Visa Lookout System, to determine any grounds on which the alien may be inadmissible to or deportable from the United States, or ineligible to apply for or be granted asylum;
>
> **(ii)** *in the absence of exceptional circumstances*, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed;
>
> **(iii)** *in the absence of exceptional circumstances*, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed[.]

8 U.S.C. § 1158(d)(5)(A)(i)–(iii) (emphases added).  As this language shows, although the INA suggests that USCIS must make a final determination no later than 180 days after the filing of a Form I-589, the government maintains the discretion to regulate proceedings on its own timeline when facing "exceptional circumstances."  8 U.S.C. § 1158(d)(5).  In recent years, USCIS has

---

[1] A defensive asylum application, on the other hand, is made when an individual currently undergoing removal proceedings in front of the Executive Office of Immigration Review, requests asylum as a defense to removal from the United States.  *See* 8 U.S.C. § 1158(a) (permitting any immigrant present in the United States to request asylum, regardless of whether they entered through a designated port of arrival and regardless of their current immigration status); *id.* § 1158(B)(ii) (providing that an immigrant who an asylum officer has determined to have a credible fear of persecution shall be detained while asylum application is considered).

faced a significant backlog of asylum applications, which has caused applications to remain unadjudicated for longer than 180 days. *See infra* n.3. To mitigate the risks caused by backlogs, affirmative asylum seekers with pending applications are eligible for several benefits, including the ability to remain in the country without fear of removal and eligibility for workplace authorization until their case is decided. *See* 8 U.S.C. § 1182(a)(9)(B)(iii)(II) (stating "unlawful presence" accrual stops at filing of asylum application); 8 C.F.R. § 1.3(a)(5) (same); 8 U.S.C. § 1182(d)(5)(A) (permitting advanced parole for urgent humanitarian needs), 8 C.F.R. § 208.8 (same); 8 U.S.C. § 1158(d)(2) (governing employment authorization); 8 C.F.R. §§ 208.7(a)(1), 274a.13(a)(2), 208.7(b) (eligibility to apply for employment authorization, and ability to renew throughout application's pendency).[2]

These benefits, however, initially led to a rise in meritless applications. Accordingly, in 1995, the historical Immigration and Naturalization Services ("INS"), now USCIS, implemented a "Last-In, First-Out" ("LIFO") policy wherein it prioritized adjudicating newer cases to discourage the filing of meritless claims.[3, 4] Although this system was effective in reducing the

---

[2] *See also Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020) ("Plaintiff is permitted to live in the United States without fear of being removed to her home country while her application is pending, and can even apply for employment authorization during the pendency of her application."); *Lajin v. Radel*, No. 19-cv-52, 2019 WL 3399363 at *4 (S.D. Cal. July 26, 2019) (holding that asylum applicants may remain in the United States without fear of removal until a decision on their application is made).

[3] *See* USCIS Press Release, *USCIS to Take Action to Address Asylum Backlog* (Jan. 31, 2018), https://www.uscis.gov/news/news-releases/uscis-take-action-address-asylum-backlog (last accessed Dec. 4, 2025) ("Addressing Backlog"); Letter from USCIS to Rep. Gerald E. Connolly, at 4 (July 29, 2021), https://www.uscis.gov/sites/default/files/document/foia/Asylum_Cases_Pending-Rep._Connolly_7.29.21_0.pdf (last accessed Dec. 4, 2025) ("USCIS July 2021 Letter"); USCIS, Backlog Reduction of Pending Affirmative Asylum Cases Oct. 20, 2021, at 2, https://www.dhs.gov/sites/default/files/2021-12/USCIS%20-%20Backlog%20Reduction%20of%20Pending%20Affirmative%20Asylum%20Cases.pdf ("Backlog Reduction").

[4] The Court may properly consider information gleaned through official government websites and postings about USCIS's policies and procedures, despite it not appearing in Aydin's original Complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that "when ruling

asylum application backlog, *see* USCIS July 2021 Letter at 5, USCIS's Asylum Division was later required to divert resources from affirmative asylum applications to credible fear screenings (i.e., an asylum officer determines whether an arriving alien has a credible fear of persecution or torture in their home country) at the Southern border, *see* Backlog Reduction at 2–3.[5]  In response, USCIS began utilizing a "First-In, First-Out" ("FIFO") strategy in 2014.  *See* USCIS July 2021 Letter at 4.  But after the end of LIFO, USCIS again saw a significant increase in the filing of meritless affirmative asylum applications, which exacerbated the still significant backlog of cases.  *See id.* at 4–5.  Accordingly, in early 2018, USCIS returned to its initial LIFO policy and continues to utilize this organization system today.  *See* Addressing Backlog.[6]

Although the return to the LIFO policy has helped to slow the rate at which the backlog is increasing, multiple other factors have prevented USCIS from overcoming the backlog of pending asylum applications.  *See* USCIS July 2021 Letter at 5.  In particular, an increase in asylum applications following the termination of Title 42 (a public health order allowing the expulsion of migrants during the COVID-19 pandemic),[7] an increase in the number of

---

on Rule 12(b)(6) motions to dismiss" the court may consider "matters of which a court may take judicial notice"); *see also* Fed. R. Evid. § 201(b) (permitting judicial notice of adjudicative facts that are "(1) generally known and within trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Sturgeon v. Pharmerica Corp.*, 483 F. Supp.3d 246, 257 (3d Cir. 2020) (permitting the Court to take judicial notice of matters of public records, such as agency filings and reports, published on official government webpage); *Azam v. Bitter et al.*, No. 23-cv-4137, 2024 WL 912516 at *11 (D.N.J. Mar 4, 2024) (wherein the Court takes judicial notice of U.S. State Department guidance, visa backlog reports, and a New York Times article when deciding an immigration matter).

[5] *See also* USCIS, Annual Report 2020, at 45–46 (June 30, 2020), https://www.dhs.gov/sites/default/files/publications/20_0630_cisomb-2020-annual-report-to-congress.pdf (last accessed Dec. 4, 2025).

[6] *See also* USCIS, Affirmative Asylum Interview Scheduling, https://www.uscis.gov/ humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last accessed Dec. 4, 2025) ("Interview Scheduling").

[7] USCIS Feb. 2023 Letter at 2*; cf.* DHS Press Release, *DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes* (Jan. 5,

unaccompanied children entering the United States,[8] and the effects of Operation Allies

Welcome,[9] combined with a reduced USCIS capacity following the COVID-19 pandemic,[10]

have further exacerbated the backlog of I-589 applications pending before USCIS.  In response

to these additional hurdles, USCIS reallocated some officers in April 2024 to engage in FIFO

practices.  *See* Interview Scheduling.  In other words, as of the date of this Memorandum, USCIS

engages in *both* LIFO and FIFO review; thus, attacking the backlog at both ends.  In addition,

asylum seekers may now submit a request to expedite their decision based on circumstances such

as "severe financial loss," "urgent humanitarian situations," or "clear USCIS error."[11]

    With this background in mind, the Court turns to Aydin's asylum application.  As noted

above, Aydin has yet to receive a ruling on the Form I-589 application that she filed more than

five years ago—indeed, she has yet to even be interviewed by USCIS—and she brings this action

to compel USCIS to rule on her application.  (Doc. No. 1.)  In her Complaint, Aydin alleges that

USCIS has willfully and unreasonably delayed and refused to adjudicate Aydin's request for

asylum, thereby depriving her of her rights to asylum and withholding of removal as

promulgated under the INA.  (*See generally id.*)  Aydin asserts that USCIS is required to begin

considering asylum applications within 45 days after an application is filed and to make a final

---

2023), https://www.dhs.gov/archive/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and (last accessed Dec. 4, 2025).

    [8] Congressional Research Service, Unaccompanied Alien Children: An Overview (Sep. 5, 2024), https://crsreports.congress.gov/product/pdf/R/R43599 (last accessed Dec. 4, 2025).

    [9] § 2502(a), (c), Pub. L. No. 117-43, 135 Stat 344, 377 (creating general eligibility standards and expeditious adjudication asylum for eligible Afghans under Operation Allies Welcome).

    [10] USCIS Press Release, USCIS Offices Resume In-Person Services (Aug. 11, 2020), https://www.uscis.gov/outreach/uscis-offices-resume-in-person-services (last accessed Dec. 4, 2025); USCIS, Annual Report 2021, at 8 (June 30, 2021), https://www.dhs.gov/sites/default/files/publications/dhs_2021_ombudsman_report_med_508_compliant.pdf (last accessed Dec. 4, 2025).

    [11] USCIS, Expedite Requests, https://www.uscis.gov/forms/filing-guidance/expedite-requests (last accessed Dec. 4, 2025).

decision within 180 days.  (*Id.* at 3.)  She also suggests that USCIS's failure to timely adjudicate

her application creates concerns for her health and welfare but fails to explain how her health and

welfare are threatened.  (*Id.* at 6.)  Based on these allegations, Aydin asserts claims under the

Mandamus Act and the Administrative Procedure Act ("APA"), and she asks that this Court

compel USCIS to adjudicate her asylum claim without further delay.  (*Id.* at 2–3, 7.)

     USCIS moves to dismiss both of Aydin's claims, arguing that Aydin's Mandamus Act

claim fails under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction

and that both claims fail under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief may be granted.  (Doc. No. 7.)  Aydin opposes the motion to dismiss.

(Doc. No. 9.)

## II.    LEGAL STANDARD

     USCIS moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

In this case, the standard governing each challenge is essentially the same.

### A.    Rule 12(b)(1)

     Rule 12(b)(1) governs challenges to a complaint for lack of subject matter jurisdiction.

*Williams v. Litton Loan Servicing*, No. 16-cv-5301, 2018 WL 6600097, at *5 (D.N.J. Dec. 17,

2018) (quotation marks omitted).  A motion brought pursuant to this Rule may be treated as

"either a facial or factual challenge to the court's subject matter jurisdiction."  *Gould Elecs. Inc.

v. United States*, 220 F.3d 169, 176 (3rd Cir. 2000).  Here, USCIS raises a facial challenge,

meaning it "contests the sufficiency of the complaint because of a defect on its face," and in

deciding such a motion, the court considers only the "allegations in the complaint, along with

documents referenced therein, in the light most favorable to the nonmoving party."  *Williams*,

2018 WL 6600097, at *5 (quotation marks omitted).

6

### B.    Rule 12(b)(6)

Rule 12(b)(6) governs the plausibility of a plaintiff's allegations.  *See* Fed. R. Civ. P. 12(b)(6) (allowing a motion to dismiss for "failure to state a claim upon which relief can be granted").  To survive a motion to dismiss brought pursuant to this Rule, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  Although the plaintiff does not need to include "detailed factual allegations" to survive dismissal, they must "provide the grounds of [their] entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted).  In deciding whether the complaint meets this standard, the court generally does "not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  That said, a court "may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).  The court may also consider any facts for which it can take judicial notice. *Tellabs, Inc.*, 551 U.S. at 322.

### III.    DISCUSSION

As noted above, Aydin brings two claims, one under the Mandamus Act and one under the APA.  The Court addresses USCIS' motion to dismiss each count in turn.

### A.    Writ of Mandamus

Aydin seeks a writ of mandamus that would compel USCIS to "adjudicate the Plaintiff's application for asylum and withholding of removal."  (Doc. No. 1 at 7.)  The Mandamus Act grants district courts original jurisdiction over actions to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."  28 U.S.C. § 1361.

The Supreme Court has cautioned that mandamus is a drastic remedy and only to be issued in extraordinary circumstances. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *Abulsheour v. Mayorkas*, No. 24-cv-548, 2024 WL 5170742 at *1 (E.D. Pa. Dec. 19, 2024) (same); *cf. Getson v. Blinken*, 2025 WL 1933704, at *4 (E.D. Pa. July 14, 2025) ("[T]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief."). A plaintiff seeking such relief must show that: (1) they have a clear and indisputable right to relief; (2) the government agency or official is violating a clear duty to act; and (3) no adequate alternative remedy exists. *See Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 2 F.4th 121, 130 (3d Cir. 2021) (citing three-part test outlined in 33 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure Judicial Review § 8312 (2d ed. Apr. 2021 update)); *Abulsheour*, 2024 WL 5170742 at *1 (applying three-part test in context of outstanding asylum application). If any of these elements is not met, the court lacks jurisdiction over the mandamus claim and must dismiss it. *See Ahmad v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-3332, 2024 WL 3272832 at *3 n.2 (D.N.J. July 2, 2024) ("[C]ourts have disagreed as to whether a failure to satisfy the elements of a mandamus claim under 28 U.S.C. § 1361 warrants dismissal for lack of jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). However, the Third Circuit has indicated that the three elements necessary to obtain mandamus relief . . . are jurisdictional." (internal citations omitted)).

Here, Aydin asks the Court to compel USCIS to "perform [its] duty to adjudicate" her asylum application. (Doc. No. 1 at 7.) Aydin appears to make two arguments in support of this claim. First, Aydin argues that USCIS has violated a clear duty under the INA because it did not adjudicate Aydin's asylum application within the 180 days contemplated by § 1158(d). (*See*

8

Doc. No. 1 at 3 (arguing that the language of § 1158(d) is "mandatory, not discretionary").)
Second, Aydin argues that apart from any timeframes set forth in the INA, USCIS's nearly five-
year delay in processing her application violates USCIS's broader duty to act without
unreasonable delay under the APA.  (*Id.* at 2 ("The APA requires USCIS to carry out its duties
within a reasonable time.")); *see Xu*, 434 F. Supp. 3d at 51 ("Plaintiff's right to adjudication
within a reasonable time exists independently of § 1158(d) . . . .").  Aydin cannot show that the
Court has jurisdiction to consider Aydin's mandamus claim under either argument.

> **1.**   **Aydin Does Not Have a Clear and Indisputable Right to Have Her Asylum Application Reviewed within the Timeframes Outlined in § 1158(d).**

First, to the extent Aydin claims that USCIS *must* review her application within the
timeframe set forth in § 1158(d)(5), she cannot show that she possesses a "clear and indisputable
right to relief."  *See Temple Univ. Hosp., Inc.*, 2 F.4th at 130.  To determine whether Aydun
possesses a right to relief, the court must look to the underlying statute—here, the INA—to
determine "whether it displays an intent to create not just a private right but also a private
remedy."  *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001); *see also Bakos v. Am. Airlines,
Inc.*, 748 F. App'x 468, 473–74 (3d Cir. 2018).  In particular, the court considers whether
"rights-creating language" is embedded in the text and structure of the statute.  *Sandoval*, 532
U.S. at 288.

As relevant here, the INA not only lacks this "rights-creating language," it explicitly
precludes a private individual from enforcing the timeframes in § 1158(d)(5):

> (7) No private right of action
>
> Nothing in [§ 1158(d)] shall be construed to create any substantive
> or procedural right or benefit that is legally enforceable by any party

against the United States or its agencies or officers or any other
person.

8 U.S.C. § 1158(d)(7); *Yueliang Zhang v. Wolf*, No. 19-cv-5370, 2020 WL 5878255 at *1

(E.D.N.Y. Sept. 30, 2020) (holding that § 1158(d)(7) does "nothing . . . to create any substantive

or procedural right or benefit that is legally enforceable by any party against the United States or

its agencies or officers"). As such, Aydin cannot show that she has a "clear and indisputable

right" to have her asylum claim heard within the timeframes set forth in § 1158(d)(5), and her

mandamus claim fails to the extent it is based on that argument. *See Abulsheour,* 2024 WL

5170742 at *2 ("Courts in this Circuit and across the country have held that mandamus relief is

unavailable where a statute does not create a private right of action, or a clear and indisputable

right. Those same courts have applied that logic to 8 U.S.C. § 1158, finding that because the

statute does not create a private right of action, there is no clear and indisputable right to have

asylum applications reviewed within the timeframes in § 1158(d)(5)." (internal citations

omitted)); *see also Xu*, 434 F. Supp. 3d at 56 ("Because § 1158(d) expressly does not create a

legally enforceable right or benefit against any officer of the United States or any agency,

Defendants do not owe Plaintiff a duty to adjudicate her application within the time frames

provided in § 1158(d)" and her mandamus action must be dismissed.); *Ahmad*, 2024 WL

3272832 at *4 ("[A]s countless other courts have recognized, because Section 1158(d)(7)

expressly does not create a legally enforceable right or benefit against any officer of the United

States or any agency, Plaintiffs cannot show the requisite 'clear and indisputable right to relief'

to obtain a writ of mandamus to have their asylum applications adjudicated within the time

frames provided in Section 1158(d).") (collecting cases).

**2.    Because Aydin May Pursue Her Claim of Unreasonable Delay Under the APA, There Is an Adequate Alternative Remedy to Mandamus.**

Second, to the extent Aydin claims that she is merely invoking her right to have her asylum application adjudicated without unreasonable delay as required by the APA, her mandamus action fails because she may pursue that argument under the APA, and thus, an "adequate alternative remedy exists." *Abulsheour,* 2024 WL 5170742 at *2 (quoting *Temple Univ. Hosp., Inc.*, 2 F.4th at 132).  Aydin suggests that the APA does not provide an *adequate* alternative remedy because USCIS has moved for dismissal of her APA claim.  (*See* Doc. No. 9 at 3.)  But this misunderstands the analysis.  The question is not whether the plaintiff will *succeed* in pursuing the alternative remedy, but whether the plaintiff may pursue the same relief through a different path.  In this case, the answer to that question is yes, Aydin can pursue her unreasonable delay claim and seek an order compelling USCIS action under the APA.  *See* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); *id.* § 706(1) (authorizing a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed").

Because the APA provides an adequate alternative remedy, Aydin's mandamus claim also fails to the extent it is based on an assertion of unreasonable delay.  *See Abulsheour*, 2024 WL 5170742, at *2 (rejecting the plaintiffs' argument that "they are only invoking their right to have the application adjudicated within a reasonable time" and explaining that "[t]o the extent that is the case, Plaintiffs are still barred from mandamus relief because they may pursue a claim for unreasonable delay via the APA, and thus fail to demonstrate that 'no adequate alternative remedy exists'" (quoting *Temple Univ. Hosp., Inc.*, 2 F.4th at 132)); *see also Xu*, 434 F. Supp. 3d at 56 (noting that "Plaintiff seeks mandamus relief based on Defendants' supposedly

unreasonable delay, in ostensible violation of the APA," and finding mandamus inappropriate because "an alternative remedy [was] possible under the APA," even if the plaintiff's APA claim ultimately failed (citing *Sharkey v. Quarantillo*, 541 F.3d 75, 92 (2d. Cir. 2008))); *Ahmad*, 2024 WL 3272832 at *5 ("[A]s other courts have recognized, because an alternative remedy is available to Plaintiffs under the APA—in claiming that Defendants failed to adjudicate their asylum applications in a reasonably timely manner—this Court cannot exercise subject matter jurisdiction over their Mandamus Act claim.").

*    *    *

Because Aydin has not satisfied the prerequisites to seeking a writ of mandamus, the Court dismisses her Mandamus Act claim for lack of subject matter jurisdiction.

### B.    Administrative Procedure Act

That leaves Aydin's APA claim for unreasonable delay.  As previously discussed, under the APA, a plaintiff may seek to compel agency action unlawfully withheld or unreasonably delayed.  5 U.S.C. §§ 555(b), 706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (asserting that claims under 5 U.S.C. § 706(1) applies when a plaintiff asserts that a government agency failed to take a discrete action that it was legally required to take).  To assess whether agency action has been "unreasonably delayed" courts in the Third Circuit consider four factors, which the Court will refer to as the "*Oil* factors":  (1) the length of time that has elapsed since the agency came under a duty to act; (2) the reasonableness of the statute authorizing the agency's action; (3) the consequences of agency delay; (4) any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or the need to prioritize in the face of limited resources.  *See Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998) (quotations omitted); *see also Getson v. Blinken*, No. 23-cv-4027, 2025 WL 1933704 at *9 (E.D. Pa. July 14, 2025) (using the *Oil* factors

to determine the reasonableness of delay in immigration case); *Azam*, 2024 WL 912516 at *9 (same).[12]  The Court considers each factor in turn.

### 1.  <u>Length of Time Elapsed</u>

Under the first *Oil* factor, the Court must consider the length of time that has elapsed since the beginning of the agency's delay.  Here, Aydin filed her asylum application in December 2020; it had been pending nearly four years when she filed her Complaint in November 2024, and it has been pending nearly five years at the writing of this Memorandum. Some district courts in the Third Circuit have found that a two-year delay in the adjudication of an asylum application is unreasonable.  *See Abulsheour*, 2024 WL 5170742 at *3 (holding that a two-year delay in adjudicating an asylum application was unreasonable); *Alvarez v. Raufer*, No. 19-cv-3155, 2020 WL 1233565 at *4 (E.D. Pa. Mar. 12, 2020) (holding that a four-year delay in ruling on asylum application was unreasonable and noting that courts have found delays

---

[12] By contrast, courts outside the Third Circuit typically employ the "*TRAC* test" to determine whether a plaintiff has satisfied their burden under § 706(1).  *See Getson*, 2025 WL 1933704 at *13 n.10. This test, which was first outlined in *Telecommunications Research and Action Center v. FCC* and which Aydin discusses in her Complaint, notes that:

> the time agencies take to make decisions must be governed by a "rule of reason";
>
> where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> delays that might be reasonable in the sphere of economic regulation are less tolerable when health and welfare are at stake;
>
> the court should the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> the court should the nature and extent of the interests prejudiced by delay; and
>
> the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

50 F.2d 70, 80 (D.C. Cir. 1984).  Although the *TRAC* test does not govern this Court's analysis, other courts' application of the *TRAC* factors in similar cases may be considered persuasive authority.  *See Assadzadeh v. Mueller*, No. 07-cv-2676, 2007 WL 3252771 at *6 (E.D. Pa. Oct. 31, 2007).

unreasonable "when defendants fail to comply with timeframes anticipated—though not necessarily mandated—by the underlying immigration laws at issue, or, in the absence of a specific statutory timeframe, when defendants fail to act for over two years" (collecting cases)). But other courts—both within and outside of the Third Circuit—have found "delays of three to five years" to be reasonable. *See Ahmad*, 2024 WL 3272832, at *6 (quoting *Jamoussian v. Blinken*, No. 21-cv-10980, 2022 WL 538424, at *2 (D.N.J. Feb. 23, 2022)) (collecting cases); *see also Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding "delay of almost five years" in adjudication of the plaintiff's asylum application was "not unreasonable"). Even under the more generous three-to-five-year timeframe, however, USCIS's delay here—which will reach five years next month—is at the outer limit of what courts have considered reasonable. Accordingly, the Court concludes that the first *Oil* factor weighs slightly in favor of finding USCIS has unreasonably delayed review of Aydin's application.

### 2.      Reasonableness of the Delay in the Context of the INA

The second *Oil* factor requires the Court to consider the delay within the context of the statute in question—the INA. As discussed above, the INA "specifies a timetable promoting the prompt adjudication of asylum applications." *Ahmad*, 2024 WL 3272832, at *6. But that timetable is aspirational, not mandatory. Indeed, "Congress expressly declined to create any substantive or procedural right to enforce adjudication of an asylum application within [the § 1158(d)(5)] timeframes." *Id.* (citing 28 U.S.C. § 1158(d)(7)). Accordingly, the Court finds this factor weighs against a finding of unreasonable delay. *See id.* (finding "the second factor favors Defendants" because the § 1158(d)(5) timeframes are non-binding) (collecting cases holding the same); *Xu*, 434 F. Supp. 3d at 53 (declining to "ascribe much significance to" the timetable set forth in § 1158(d) because it is "not mandatory"); *cf. Jamoussian*, 2022 WL 538424, at *2 (finding the second factor "weighs against any finding of unreasonableness"

because "nothing in federal law governing consular officials' scheduling or adjudication of visa applications imposes a particular deadline").

### 3.    <u>Consequences of Agency Delay</u>

Under the third *Oil* factor, the Court considers the consequences of the agency's delay as alleged in the plaintiff's complaint.  *See Getson*, 2025 WL 1933704 at *14; *Azam*, 2024 WL 912516 at *10.  Here, the Complaint lacks any allegations that USCIS's delay has harmed Aydin. Indeed, the only consequence that Aydin has identified at any point in this case is a sense of uncertainty she feels while awaiting USCIS's adjudication of her application.  (Doc. No. 9 at 4.) But that assertion appears in Aydin's opposition brief, not in her Complaint, and thus, the Court cannot consider it when ruling on USCIS's motion to dismiss.  *See, e.g.*, *Euler Hermes N.A. Ins. Co. v. Twinbrook OPCO, LLC*, No. 24-cv-204, 2025 WL 949844, at *2 (W.D. Pa. Mar. 28, 2025) ("[W]here, as here, a plaintiff's brief in opposition to defendant's motion to dismiss contains facts that are not expressly set forth in the complaint, the Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief." (quotation marks omitted)) (collecting cases).

Even if the Court could consider Aydin's allegations of uncertainty, they would not support a finding of unreasonable delay here.  Although the Court is sympathetic to Aydin's plight, this feeling is not exceptional but rather, one of the many "painful consequences of delay . . . inherent in our immigration system."  *Ahmad*, 2024 WL 3272832, at *7 ("While the Court is empathetic to Plaintiffs' position and can readily infer how several years of waiting might take a toll on an asylum applicant, as other courts have recognized, 'the painful consequences of delay are inherent in our immigration system.'" (quoting *Azam*, 2024 WL 912516, at *10)).  In other words, Aydin claims a harm that is common to all asylum applicants. If this were sufficient on its own, then every asylum applicant would be able to show that the

third *Oil* factor weighs in favor of a finding of unreasonable delay.  The Court declines to find as much here, especially not when many courts have required a greater showing of harm. *Cf. Getson*, 2025 WL 1933704, at *14 (finding that the plaintiff suffered adverse consequences such as family hardship and significant financial expenses resulting from USCIS's adjudicative delay); *Abulsheour*, 2024 WL 5170742, at *3 (finding the third factor weighed in favor of the plaintiffs because they claimed to suffer adverse consequences to their professional careers and personal lives in that they could not travel abroad for research and conferences or to see family, including sick elderly relatives, while their asylum applications remained pending); *Daraji*, 2008 WL 183643, at *6 (finding the third factor weighed in the plaintiffs' favor because in addition to suffering "stress and psychological pressure" while their naturalization application was pending, the plaintiffs showed that "they have expended money for application fees, renewal of permanent resident cards, travel documents required of non-citizens, and litigations costs"; "they are barred from applying for any jobs which require United States citizenship"; they "cannot partake in the benefits of citizenship, such as voting and jury service"; and they cannot "file for immigration benefits for their family members").

Finally, the Court notes that although Aydin has experienced uncertainty while awaiting adjudication of her application, she has also received several benefits, including the ability to remain in the United States without being subject to removal and eligibility for workplace authorization.  *See Ahmad*, 2024 WL 3272832, at *7 (considering these benefits and finding they weigh against a finding of unreasonable delay); *cf. Abulsheour*, 2024 WL 5170742, at *3 (noting that the consequences identified by the plaintiffs "exist despite the relevant steps Congress and USCIS have taken to mitigate the delay in the adjudication of asylum applications").

Considering those benefits and Aydin's failure to identify any consequences of delay that are specific to her situation, the third *Oil* factor weighs against a finding of unreasonable delay.

### 4.    Pleas of Administrative Error, Inconvenience, Practical Difficulty, or the Need to Prioritize

The fourth and final *Oil* factor focuses on the agency's reasons for delay.  As demonstrated at the beginning of this Memorandum, in recent years, USCIS has faced mounting pressures, decreased resources, and an increased numbers of asylum applications because of the COVID-19 pandemic and changes in immigration policy.  *See supra* Part I.  There is nothing in the Complaint to suggest USCIS's delay in considering Aydin's application is the result of anything other than these administrative hurdles.  *See Ahmad*, 2024 WL 3272832, at *7 (finding fourth factor "weighs against a finding of unreasonable delay" where nothing in the Complaint suggested "that delays have resulted from anything other than limited administrative resources and a large caseload of asylum applications that have yet to be adjudicated").  As such, the only meaningful result of compelling agency action in this case would be to expedite resolution of Aydin's application ahead of others, permitting her to effectively skip the line for review created by USCIS's LIFO and FIFO policies.  *See Azam*, 2024 WL 912516 at *10; *Ali v. U.S. Dep't of State*, 676 F.Supp.3d 460, 468 (E.D.N.C. 2023).  Many courts have cautioned against compelling "agency action where the result would be merely to expedite the consideration of a plaintiff's request ahead of others."  *Ahmad*, 2024 WL 3272832, at *7 (quoting *Azam*, 2024 WL 912516, at *10).

Nevertheless, the mere fact that USCIS—like a host of other government agencies—is facing competing priorities does not permit them to allow a delay to persist indefinitely.  *See Abulsheour*, 2024 WL 5170742 at *4; *Saavedra Estrada v. Mayorkas*, 703 F. Supp. 3d 560, 571 (E.D. Pa. 2023) (stating that "USCIS has many priorities and limited resources is insufficient to

justify granting their Motion to Dismiss").  In short, although administrative backlogs have been described as the "byproduct of a reasoned attempt to address mounting issues with the asylum process" through the LIFO and FIFO policies, *Xu*, 434 F.Supp.3d at 53, USCIS is not absolved from its duty to adjudicate asylum applications without unreasonable delay.

Numerous courts have noted the difficulty district courts face when trying to weigh an applicant's "clear rights to administrative action against the agency's burdens," especially when the agency's burdens are systemic, as is the case here.  *See, e.g.*, *Abulsheour*, 2024 WL 5170742, at *4; *Daraji*, 2008 WL 183643, at *7.  With due regard for this difficulty and recognizing the split in case law on the issue, the Court finds this factor is neutral, weighing neither against nor in favor of a finding of unreasonable delay.

*     *     *

In sum, one factor weighs in favor of a finding of unreasonable delay, two weigh against, and one is neutral.  Taking these factors together, the Court finds that Aydin has failed to demonstrate that USCIS's delay in adjudicating her asylum application is unreasonable under the APA.  Thus, her APA claim is also dismissed.  Because Aydin chose not to amend her Complaint as of right upon receiving USCIS' motion to dismiss, and did not request leave to amend in her briefing on the motion, this claim is dismissed without leave to amend.[13]

**IV.    CONCLUSION**

For the reasons discussed above, the motion to dismiss is granted, and Aydin's claims are dismissed without leave to amend.  An appropriate Order follows.

---

[13] This does not, however, foreclose Aydin's ability to bring a future APA claim should USCIS continue to delay adjudication of her application.

18